MILLER, Judge.
Plaintiff, Sam Parish Construction Company sued Cities Service Pipeline Company to recover the sum of $118,328.16 allegedly due plaintiff under a contract for the construction of a tank car repair shop on defendant’s premises in Calcasieu Parish. Defendant denied it owed plaintiff any sum whatsoever and filed a reconventional demand for damages alleging plaintiff failed to complete its contract. Judgment was rendered for plaintiff in the sum of $113,670.94 and defendant’s reconventional demand was rejected. Defendant has appealed. We affirm.
The primary issue to be decided is whether the parties entered into a straight cost-plus contract or a cost-plus contract with a stipulated maximum price. Plaintiff contends the parties entered into a cost-plus contract and that defendant has failed to pay the sum of $118,328.16, representing the balance owed on the contract upon which defendant has already paid the sum of $229,314.69. Defendant denies it owes plaintiff any amount and contends that the parties agreed to a cost-plus contract with a maximum cost figure of $225,313.00 and that it has paid plaintiff sums in excess of the maximum price. Defendant also filed a reconventional demand for damages in the total sum of $55,584.40, representing payment in excess of the alleged maximum contract price, the cost for completing the work covered by the contract, and the cost of stand-by salaries paid to Cities Service personnel employed to operate the tank car repair shop.
During February and March of 1968, representatives of defendant Cities Service and Sam Parish, president of the plaintiff corporation, began negotiations on the tank car repair shop. On March 15, 1968 plain *75 tiff submitted an estimate of costs for doing the work in the sum of $206,624.00. Apparently no further move was made by either party on this bid. By letter dated May 3, 1968 defendant sent a set of specifications to plaintiff and requested that plaintiff furnish a “turn key proposal” for the work based on the enclosed specifications. The letter stated that defendant desired to begin construction on May 13, 1968 with an expected completion date of August 30, 1968. On May 11, 1968 plaintiff wrote to Cities Service proposing to build a tank car repair shop on a time and materials basis, “per our conference, telephone conversations, and preliminary drawings at an outside figure of two hundred twenty-five thousand three hundred fifty-nine and no one hundred ($225,359.00) dollars.” After the letter was received by Cities Service, plaintiff was contacted by telephone by Larry Moore, Cities Service Engineer, who informed plaintiff to begin work on the site on May 16, 1968.
On May 29, 1968 defendant sent a purchase order to plaintiff wherein it stated:
“Furnish all labor, tools, equipment, supervision, vehicles, and material (except material being furnished by Cities Service) to build a tank car repair shop in West Lake Charles, Louisiana, as per Cities Service specifications. On a time and material basis, per letter outlining terms of cost-plus work dated 5/20/68, per labor rates dated 5/21/68, and per letter stating maximum contract price dated 5/11/68. Contract payments are not to exceed $225,359.00.”
The purchase order was received by plaintiff on May 31, 1968. On June 4, 1968 Sam Parish sent a letter to defendant taking exceptions to the purchase order wherein he stated:
“There are many things mentioned in the specifications such as painting, piping, electrical work, etc., which we do not know and still do not know the quantity of work to be done.
“For the above reasons we do not feel that it would be fair to either party to tie our purchase order down to this set of specifications.
“2. Contract payments are not to exceed Two Hundred Twenty-Five Thousand Three Hundred Fifty-Nine and No/100 ($225,359.00) Dollars — this estimate is based on the quantity of work as we understood it from our conference, telephone conversations and preliminary drawings at the time our quotation was made.
“Any extra work that was not contemplated at the time the above quotation was made, such as the extra clearing, extra excavation, extra fill to be placed in the railroad bed and the cost of disposing of the three thousand yards of dirt, trees, stumps, etc., which was excavated out of the railroad bed (original plan was to reuse this dirt as fill in the railroad bed) will not be figured in the $225,359.00, which is our outside figure to build a Tank Car Repair Shop in West Lake Charles, Louisiana.”
Defendant did not reply to this letter.
In accordance with the arrangement of the parties, plaintiff rendered weekly progress reports to defendant on the construction and submitted itemized billings for payment every two weeks. As of October 18, 1968 plaintiff had rendered ten itemized billings to defendant which totaled $214,563.60, all of which were paid by the defendant. On November 4, 1968 plaintiff rendered its eleventh itemized billing for $75,311.01. The defendant refused to pay this bill and the subsequent bills of plaintiff except for the sum of $15,621.72 paid directly to two subcontractors for the benefit of plaintiff. At that point defendant had paid directly to plaintiff or for the account of plaintiff the sum of $230,185.32. Based upon its contention that the maximum fee on the job was $225,359.00 defendant refused to pay any further sums. Defendant then informed plaintiff to cease work on the job effective November 12, *76 1968 which resulted in plaintiff moving from the job site a day or two later.
The trial judge concluded that the parties entered into a straight cost-plus contract. In his opinion, the negotiations reflected that the parties never consummated any agreement as to an outside or maximum figure. In a thorough analysis of the problem, the trial court reasoned as follows :
“It is noted that the proposal of May 11, 1968, was not addressed to the defendant, but to an address, marked for attention of Mr. Zieba, and serves only to emphasize the sketchy basis of the agreement between the parties. The proposal to build the repair shop at an ‘outside figure’ of $225,359.00 is stated to be on a ‘time and materials basis, per our conference, telephone conversations and preliminary drawings.’ There is no evidence as to what was developed at ‘our conference’ or in ‘telephone conversations’, and the parties are in disagreement as to the nature of the ‘preliminary drawings’ on which the proposal was made. The purchase order, dated May 29, 1968, and received by the plaintiff May 31, 1968, to which certain exceptions were taken in a letter dated June 4, 1968, referred to ‘Cities Service specifications’, which were not mentioned in the proposal of plaintiff referred to above. The letter of plaintiff dated May 11, 1968, was incorporated in the purchase order by reference, as were other letters annexed thereto. It appears that the defendant found it necessary to deliver its purchase order, purporting to set forth more fully the terms of the agreement between the parties and, accordingly, it would seem that the verbal telephone notice of Larry Moore to Mr. Parish to proceed with the work after his proposal of May 11, 1968, was not to be considered as a firm acceptance of the May 11th letter as setting forth the contract between the parties. It cannot be considered that the purchase order was an acceptance in itself of the May 11th letter proposal, as it purported to contain, or refer to, matters not mentioned in the proposal of May 11th. It must be concluded that the exceptions taken to the purchase order by the plaintiff in its letter to the defendant on June 4, 1968, setting out three matters of disagreement, but including the maximum cost price, cannot be held to confirm any definite agreement between the parties except that construction shall proceed on a cost-plus basis. Under these circumstances, since construction did proceed on a cost-plus basis, it appears that the parties had a contract to that extent and to any other extent that they might agree was covered by their conference, telephone conversations, and any writings referred to that were not disputed. It is strenuously urged by the defendant that the letter of June 4, 1968, in which the plaintiff took certain exceptions to the purchase order, confirms the contention of the defendant that work not covered by the proposal of $225,359 would be considered as extra work. As a matter of fact, plaintiff’s letter of June 4th referred to the figure of $225,359 as the ‘outside figure’ to build the shop, and that said figure would not cover any extra work that was not contemplated at the time the quotation was made. As set forth in the letter of June 4th, plaintiff emphasized that the figure quoted was an estimate based on the quantity of work as understood by the plaintiff from the conference, telephone conversations and preliminary drawings at the time the quotation was made. The difficulty is that there is nothing definite to determine the quantity of work, or to determine that the parties agreed on a quantity of work, to be covered by the quotation of $225,359.00.”
“Considering the circumstances outlined above, the plaintiff made a written proposal on May 11, 1968, on a very indefinite basis. That proposal was never accepted, as the response thereto was defendant’s purchase order of May 29, 1968. Mr. Parish, who protested, by letter of June 4, 1968, three items referred *77 to in the purchase order, two of which related directly to the previously quoted figure of the plaintiff, asserted that that figure had been quoted on the work contemplated as of May 11, 1968, and it was claimed that the nature and extent of the work had been changed and increased. Accordingly, this Court concludes that the contract documents, such as they were, did not set forth an agreement, or meeting of the minds, to perform any certain work or construction for the outside figure of $225,359. There was no reply by the defendant to plaintiff’s protesting letter of June 4, 1968, and it appears that construction proceeded on the repair shop on a cost-plus basis with the plaintiff making various progress reports to the defendant on a weekly basis.”
We agree with the conclusion of the trial court that the parties never reached a definite agreement as to a maximum contract price but chose to proceed on a cost-plus basis.
There is no doubt that the $225,359.00 figure was discussed by the parties in the early stages of their negotiations. In the May 11, 1968 letter plaintiff admits the sum as an “outside figure” based on the telephone conversations, conferences and preliminary drawings of the parties. However, as noted by the trial court, the evidence is extremely sketchy as to what actually transpired between the parties during their preliminary conferences and telephone conversations. The fact that Cities Service responded to plaintiff’s proposal of May 11, 1968 with its own purchase order of May 29, 1968 is pertinent evidence that Cities Service was of the opinion that the parties had not reached full accord on all aspects of the agreement and that it felt compelled to outline in more detail what it believed was the binding aspects of the contract. Plaintiff’s exceptions to the defendant’s purchase order by its letter of June 4 further evidences the lack of a thorough understanding between the parties. It is to be noted that in this letter plaintiff’s president emphasizes that the figure of $225,359.00 was based on his understanding of the negotiations at the time the offer was made on May 11, and that certain phases of the construction has changed since that date. Defendant did not make any written response to this letter. However, it contends that one of its representatives met with Sam Parish on June 6 and discussed the agreement, but the evidence on this meeting is unclear.
It seems obvious that upon receipt of the June 4 letter defendant knew or should have known that plaintiff no longer felt bound to an absolute figure of $225,359.00. It was encumbent upon defendant at that point to make its position clear on the contract or forever be bound by its silence. We can only conclude that by failing to respond to plaintiff’s letter in a positive and unequivocal manner and by allowing the construction to continue, defendant acquiesced in the construction on a cost-plus basis. See C.C. Article 1811 and Prisock v. Boyd, 199 So.2d 373 (La.App. 2 Cir. 1967).
Moreover, defendant’s actions subsequent to the negotiations bears out the above conclusion. Defendant had at least one representative on the job at all times during construction whose duty it was to approve the materials and labor changes made by plaintiff on the job. There men were aware of every phase of the operation and had first hand knowledge of the expenses being incurred by plaintiff for the construction. During the course of construction, plaintiff sent weekly progress reports to defendant which spelled out in detail the work being done on the job. No written response was ever made by defendant to any of these reports nor was any written complaint ever made to plaintiff concerning any of plaintiff’s conduct on the job. Minor disputes between the parties’ representatives did arise but none were of such magnitude as to impede progress on the job. When plaintiff moved on the job site it was given a general plat plan by defendant, which plan was changed on two later occasions. In its weekly progress re *78 ports plaintiff made continued requests to defendant for detailed drawings of various aspects of the work. Plaintiff testified that it could not proceed on a certain phase of the operation until a detailed drawing of the work was obtained from defendant. The evidence reflects that more than forty drawings were sent to plaintiff beginning in the months of June through October, 1968. Seventeen of these plans were received during the month of October, well after the August 30, 1968 completion date contemplated by defendant in its letter of May 3, 1968. Plaintiff’s representative and one subcontractor of plaintiff testified that they had never before encountered such difficulty in obtaining drawings. As noted by the trial court, the almost complete lack of detailed drawings during the negotiations between the parties emphasizes that neither party had a clear conception as to the nature or extent of the work to be done and lends support to plaintiff’s protests against the sum of $225,359.00 when it became obvious that considerably more work was to be done than originally contemplated.
As noted above, plaintiff sent biweekly billings to defendant, ten of which were promptly paid before defendant refused to pay the eleventh and subsequent billings. Plaintiff contends that defendant owes over and above its prior payments the sum of $118,328.16 as reflected by its billings dated November 3 and 23, 1968 and its January 17, 1969 billing. The trial court awarded plaintiff the sum of $113,570.94. The trial court refused to grant the sum of $4,657.22 claimed as part of plaintiff’s January 17, 1969 billing on the ground that the evidence did not substantially establish that the items were used in the construction project. We agree that this particular invoice does not sufficiently establish that the items claimed were for work performed on the project and accordingly we disallow this sum.
As to the remaining sum claimed, the invoices sent by plaintiff reflect an itemized and detailed account of the work performed and materials used in the project. Defendant’s representatives signed each of the time sheets made out by plaintiff and one of defendant’s representatives testified he checked all the invoices sent by the various subcontractors to the plaintiff. Defendant’s engineer in charge of the project admitted there was nothing to indicate that the work and materials listed in the billings that defendant refused to pay did not inure to the benefit of the defendant. In effect, there is nothing in the evidence to indicate why defendant should not pay this sum other than its contention that it owed no more than the alleged maximum contract price. We thereafter concur in all respects with the trial court’s award to the plaintiff.
In its reconventional demand, defendant claims damages in the total sum of $55,584.40. Of this amount claimed, $4,846.32 represents payment to plaintiff over the alleged maximum contract price and $39,738.08 represents the alleged cost of completing the work after plaintiff moved from the job site. Since we have concluded that the parties entered into a cost-plus contract with no agreed contract price, defendant is not entitled to recover these two items claimed.
The balance of the $11,000.00 claimed by defendant is allegedly due as an item of damages resulting from plaintiff’s failure to have the tank car repair shop ready for operation in early November 1968. More particularly, defendant alleges that it brought certain personnel from Ponca City to Lake Charles to operate the repair shop after its completion, and that the plaintiff’s delay in completion caused defendant a loss by forcing it to pay stand-by salaries and wages.
Defendant bases its argument upon the premise that the construction was to be completed by August 30, 1968. Defendant did indicate in its May 3, 1968 letter that it requested completion of the project by August 30, 1968. However, we find nothing in the later negotiations by the parties *79 which indicates any completion date was fixed. In any event, we are not impressed by this argument because as has been noted, defendant sent seventeen of its drawings to plaintiff in the month of October, well beyond the August 30 date. Defendant’s representatives were on the job each day and knew the status of the construction at all times. Since defendant obviously was aware of the expected date of completion of the work, it would be difficult for use to conclude that defendant relied on plaintiff in bringing its employees to Lake Charles. The defendant’s claim for $11,000.00 is denied.
The judgment of the trial court awarding plaintiff $113,670.94 is affirmed at defendant-appellant’s costs.
Affirmed.