LANDRY, Judge.
Mrs. Elda P. Duet, Widow and Adminis-tratrix of the estate of her deceased husband, Elvin Duet (Appellant), appeals from a judgment rejecting and dismissing Appellant’s action to recover the sum of $52,-500.00 allegedly due by defendant, Edwin Kiffe, on a contract pursuant to which Appellant agreed to furnish certain labor and materials for the construction of a shrimp trawler, the Mister Kiffe, for defendant Kiffe. Defendant reconvened for the sum of $10,000.00 allegedly spent in providing work on the incomplete vessel which should have been finished by Appellant. Mr. Duet’s death occurred subsequent to trial. His widow has been duly substituted herein. The primary question is whether the verbal contract for the vessel was on a cost plus 15% basis with no limitation as to amount, as contended by Appellant, or whether, as claimed by defendant, the agreement was on a cost plus 15% basis subject to a limitation of $60,000.00 for the work and material to be furnished by Appellant, and an overall cost of $87,000.00, including the engine, masts, rigging and other equipment to be paid for by defendant, but installed by Appellant. The trial court found that the agreement called for a limitation of approximately $60,000.00 for the materials to be furnished and work to be performed by Appellant. We affirm.
Mr. Duet operated a shipyard at Galliano, Louisiana, for the building and repairing of *535 boats. Defendant, Kiffe, a commercial shrimper, operates a small fleet of shrimp trawlers. In August, 1966, defendant contacted Appellant and discussed construction of a steel hulled shrimp trawler 75 feet long and having a midship width of 22 feet and a bow height of approximately 19 feet. After consultation with Appellant and Appellant’s foreman-partner, Leonce Duet, plans for the vessel were drawn by Leonce Duet. In September, 1966, while defendant was at sea fishing, work on the vessel commenced. Upon defendant’s return, the work progressed with defendant in almost daily attendance at the shipyard when defendant was either not at sea or not otherwise engaged in attending to his affairs. In early February, 1967, work on the vessel halted, defendant having admittedly paid Appellant $55,000.00 of the contract price. When work on the vessel had stopped for two or three weeks, defendant removed the boat from Appellant’s shipyard to another shipyard where the trawler was eventually completed. At the time of removal, the boat was approximately 75% complete. Its main engine had not yet been installed, but most of its hull, cabin, electrical work, piping and insulation work was almost finished. Considerable gear, machinery and rigging to be furnished by defendant was aboard the vessel, but not yet installed by Appellant. On February 24, 1967, Appellant furnished defendant a statement showing costs incurred in the sum of $99,837.55, which together with 15% came to a total of $114,-813.70. Defendant requested an itemized statement. On May 1, 1967, Appellant presented defendant a final statement of costs (including 15%) in the sum of $116,500.00. Defendant declined payment. Appellant then instituted this action to recover the difference between the final statement of $116,500.00 and the $55,000.00 paid by defendant.
During the course of the trial, a partial compromise was reached between the parties. Pursuant thereto defendant paid Appellant the additional sum of $9,000.00 cash. In return Appellant surrendered to defendant certain materials and fabricated parts which Appellant had either ordered or manufactured for incorporation into the vessel. Pursuant to the compromise agreement, defendant dismissed his reconventional demand against Appellant.
It appears beyond question that during the construction of subject vessel, Appellant was simultaneously engaged in building a boat for a third party during the months of September and October, 1966. It is also conceded that whereas Appellant’s entire force and facilities were to be devoted to construction of defendant’s boat, during construction thereof, Appellant occasionally used some of his employees in performing work for third parties.
During the trial it developed that many of Appellant’s original records, such as daily time sheets, had been destroyed. To establish his claim for labor, Appellant sought to introduce in evidence reconstructed records consisting largely of checks paid to his various workmen including welders, carpenters, painters and sandblasters. These records were bolstered by ledgers kept by Appellant’s bookkeeper in which the daily time of the various workers was entered and kept. To establish material costs, Appellant sought to introduce in evidence numerous invoices for materials purchased while subject vessel was under construction. Appellant explained that he did not keep daily time logs and books since his canceled checks showing payment for labor satisfied the Internal Revenue Service for tax purposes. Appellant also conceded that his itemized statements took into consideration the relatively small amount of work Appellant had performed for third persons during the construction period. Needless to say, defendant strenuously objected to the majority of Appellant’s proffered records on the grounds, inter alia, the records were not originals and therefore amounted to hearsay. The trial court admitted some records outright and others on Appellant’s proffer after defendant’s objections thereto were sustained.
Appellant contends the trial court erred in (1) failing to require defendant to prove *536 the affirmative defense of a $60,000.00 limitation on the cost plus 15% contract and finding as a matter of fact that such a limitation was agreed upon; (2) rejecting Appellant’s tendered evidence of costs and failing to give proper weight to Appellant’s “reconstructed account book”, and (3) failing to find that Appellant bore the burden of proving his costs.
Appellant’s contention there was no fixed ceiling on the cost of the work Appellant was to perform is based on the following contentions: (1) There were no final plans and specifications for the vessel when construction was commenced, it being the intent of the parties to construct the vessel as desired by defendant; (2) defendant retained supervision and control of the construction process, and (3) as work progressed defendant made numerous changes which added to the cost of the work.
In support of his position, Appellant Duet testified in essence that when the matter was discussed no ceiling was placed on the cost of the vessel because there were no detailed plans and specifications for its construction. Appellant testified in essence that it was impossible for him to quote a limited price on the labor and material to be performed and furnished by him on a vessel without precise knowledge of all construction details and equipment which the owner intended to install. He also testified in effect that his job was to build whatever type of boat defendant wanted, and that he attempted to carry out defendant’s wishes in every detail because defendant was paying the cost plus 15%. Appellant also testified that defendant made numerous changes amounting to refinements of work ordinarily done on shrimp trawlers, or which called for material and equipment superior to that customarily installed on boats of that nature.
Defendant Kiffe testified that in August, 1966, he consulted Appellant concerning construction of a 75 foot trawler having a midship beam of 22 feet and a bow height of 19 feet. Details of the vessel were discussed with Appellant and Appellant’s foreman-partner Leonce Duet. In the course of the discussion, Appellant related that Appellant had just completed the Ronald Jo, a steel hulled trawler designed and equipped similar to the vessel desired by defendant, but smaller (65 X 22 feet), for the sum of $50,000.00. Appellant advised defendant that based on Appellant’s knowledge gained in construction of the Ronald Jo, Appellant could build the larger vessel desired by defendant for a maximum of $60,000.00, and that Appellant could probably save defendant some money on the deal. Appellant also told defendant that the entire vessel including the engine, winch, rigging, generators and other machinery and equipment, which were to be furnished by defendant and installed by Appellant, would not exceed a total cost of $87,000.00. Defendant testified that he told Appellant that if Appellant could build the boat for that figure to go ahead and build it. Defendant also testified that the plans used in the construction of the Ronald Jo were gone over with Appellant and Leonce Duet, and it was agreed the Mr. Kiffe’s construction would be essentially on those same lines. Defendant concedes Appellant was to be paid cost of materials and labor plus 15%, including a monthly salary of $850.00 for Leonce Duet, but it was agreed that the cost of labor performed and material furnished by Appellant would not exceed $60,000.00. Plans for the vessel were then drawn by Leonce Duet based on those used in the construction of the Ronald Jo. Shortly after the agreement was reached, and before actual work began, defendant left on a fishing trip. On his return, he found that work had commenced. Defendant conceded he visited the shipyard frequently, and made suggestions as to how certain work was to be performed. Defendant in effect conceded he exercised some jurisdiction and supervision of the construction process, and made certain changes which resulted in the construction of an improved vessel. Defendant also maintained that some of the changes he made resulted in cost reductions. The clear import of defendant’s testimony is that he *537 would not have entered into a contract for the building of a boat without a price ceiling, and that Appellant quoted a ceiling price based on Appellant’s recent experience gained from Appellant’s construction of the Ronald Jo, a similar but slightly smaller vessel.
Leonce Duet, testifying on behalf of Appellant, stated he was Appellant’s foreman and partner during construction of both the Ronald Jo and Mr. Kiffe. He was present during the negotiations and discussions between Appellant and defendant. He had drawn the plans for and supervised construction of the Ronald Jo. Regarding the agreement as to the costs of the Mr. Kiffe, Duet testified:
“Q. Did Mr. Kiffe come to see you about talking to Mr. Duet about building a boat?
A. He had come and see me, and we talked to Mr. Duet the next day, yes, about the boat.
Q. Did you hear a conversation between Mr. Duet and Mr. Kiffe concerning an agreement between them for the construction of a boat?
A. Well, they said approximately about $87,000, is what they said it was going to be built, roughly.
Q. Did they sign a written contract?
A. No.
Q. Do you know if the agreement between Mr. Kiffe and Mr. Duet based on statements made to you by either one of them, or conversations between them that you yourself heard, whether or not it was agreed that the boat was to be built on a cost-plus basis?
A. Yes, it was supposed to be cost-plus.
Q. Do you know how much the plus was? Cost plus what?
‘ '‘3 A. 15 percent.
Q. Cost plus 15 percent?
A. Yes.
Now, you mentioned the figure of $85,000. Did Mr. Duet agree— Q.
MR. DIAZ: I think the witness mentioned the figure of $87,000.
BY MR. SEEMANN:
Q. I beg your pardon, $87,000, I stand corrected, did Mr. Duet agree to build the boat for $87,000?
A. Well, he said that it was going to cost that roughly.”
(Pages 492-493 Record)
Again in his testimony, Duet stated:
‘Q. You testified earlier that you were present when Mr. Duet spoke to Mr. Kiffe about building this boat, is that correct?
That’s correct. >
Who did Mr. Kiffe first contact about building this boat? ©
Contacted me. >
Why did he contact you ? ©
Because I know how to build a boat, that’s why he contact me. >
What kind of boat did Mr. Kiffe ask you to build ? a
He wanted a boat 76 by 22 midship, about 12 feet deep.
Did you draw up some plans? ©
I did. >
Then who did you all talk to? ©
To build the boat? >
Yes. ©
A. Me and Kiffe and Elvin Duet.
Q. All right. Where was this boat going to be built?
A. It was supposed to be Duet Marine Service.
*538 Q. Who is the owner of Duet Marine Service ?
A. Supposed to be me and Elvin Duet partnership.
Q. When the cost for Mr. Kiffe’s boat was discussed'—
A. Well, we discussed, me and Elvin Duet and Edwin Kiffe, we discussed the boat was going to cost not more than about $87,000.
Q. I see. How much was the hull going to cost ?
A. About 60.
Q. What was the other $27,000 for?
A. For the winch and the engine, the controls and all, wiring job.”
(Pages 554 — 555 Record)
Mr. Leonce Duet also testified that based on the plans for the Ronald Jo, he drew the plans for the Mr. Kiffe before work commenced thereon. He personally supervised construction of the Mr. Kiffe pursuant to instructions from Appellant and defendant until work ceased on the vessel. Mr. Duet contradicted Appellant’s testimony in numerous respects concerning changes made or ordered by defendant. In essence, Duet testified that many so called changes referred to by Appellant were not in fact changes but were usual practices or procedure followed in the construction of the Ronald Jo and other similar vessels constructed in the locality. He acknowledged that some changes ordered by defendant did in fact involve “extras”, or above ordinary costs, but that other revisions by' defendant reduced construction costs. Mr. Duet also conceded that when the Mr. Kiffe was removed from Appellant’s shipyard, he severed his connection with Appellant and resumed work on the vessel at its new location.
To further establish his contention that the price of subject vessel was pegged at a maximum of approximately $87,000.00, defendant offered the testimony of several witnesses to establish the value of similar vessels comparably rigged and outfitted.
Robert Champagne, commercial shrimper, owner of two steel hulled trawlers, including the Golden Star, testified that his Golden Star is an 80 foot vessel with a beam of 22 feet, a bow of 20 feet and a depth of 11.6 feet. He stated that the vessel, equipped with the same engine as the Mr. Kiffe, with a similarly constructed cabin and comparable gear and equipment was built for the sum of $75,000.00. He also stated that the builder furnished the engine and all equipment and gear except the nets and the doors which are used to spread the nets. He also noted that his contract was for a 75 foot boat, but that the builder made it 80 feet long rather than cut the steel plates used in its construction.
Richard Bollinger, Mechanical Engineer, owner of the shipyard which completed the Mr. Kiffe, stated that when the Mr. Kiffe was brought to his establishment for completion, he estimated that labor on the vessel was approximately 75% complete.
Arthur H. Terry, Marine Surveyor, examined the Mr. Kiffe at the Bollinger Shipyard on March 20, 1967. He noted that the engine and most of the rigging had not yet been installed although most of the necessary rigging was aboard the vessel. He appraised the hull at the sum of $49,-600.00 when he inspected it, and also found that the vessel when finished would be worth the sum of $87,000.00.
R. L. Stickney, Marine Surveyor, inspected the Mr. Kiffe on March 17, 1967, and found it approximately 90% complete. He noted the engine had not yet been installed, but that considerable uninstalled equipment was aboard the vessel. He valued the vessel in its then condition at the sum of $51,475.00. He also' testified that upon installation of the engine and rigging, the completed vessel would have a value of $79,175.00.
Relying upon Rider v. Rhodes, 110 So.2d 834, Appellant maintains the trial court *539 erred in finding that Appellant agreed to a fixed maximum price before plans for the vessel were complete and agreed upon. Appellant also urges that, as held in Sam Parish Construction Co. v. Cities Service Pipeline Co., 254 So.2d 73, the absence of detailed drawings and close supervision of the work by the owner are indicative of a cost plus contract without a ceiling, and that the trial court erred in holding otherwise. Additionally, Appellant maintains the numerous changes made by defendant increasing the cost of the vessel, suggests the absence of a fixed maximum price, as held in Wendel v. Maybury, 75 So.2d 379. Finally, Appellant contends the fact that defendant requested an itemization of costs incurred indicates the agreement was for costs plus 15% with no limitation as to amount.
As contended by Appellant, defendant bore the burden of establishing that the contract, admittedly on a cost plus basis, was subject to an agreed maximum. Annan v. Woods, 158 La. 663, 104 So. 491; Rider v. Rhodes, 110 So.2d 834. Obviously, the issue to be resolved is factual. It is elementary that in determining purely factual issues, each case must be decided in the light of its own peculiar facts and circumstances.
We have examined the Annan, Rider, Sam Parish Construction Company, and Wendel cases, above, and have no quarrel with the results reached therein in view of the facts involved. We note, particularly that in the Sam Parish Construction Company case, there was written correspondence wherein plaintiff notified defendant that certain specifically designated work would be considered as “extras” which were not included in the estimated contract price of $225,395.00.
We believe Appellant’s charge of a lack of plans is answered by the testimony which shows that the vessel in question was to be similar in design and equipment to the Ronald Jo which Appellant had recently completed. Appellant well knew the details of the vessel and its cost. Moreover, it appears that Leonce Duet, who had drawn the plans for the Ronald Jo, also drew what all parties considered sufficient plans and specifications for the Mr. Kiffe. In addition, and most significantly, Appellant’s own foreman and partner confirmed defendant’s testimony that the vessel would cost approximately $87,000.00 when completely finished and fully rigged and outfitted as ready for use.
From the evidence, the trial court concluded defendant discharged the burden of proving the contract had a fixed ceiling. It is well settled that the decision of the trier of fact is entitled to great weight, and will not be disturbed on appeal unless shown to be manifestly erroneous. Revere v. State of Louisiana, Department of Highways, 257 So.2d 442. Not only do we find no error in the trial court’s conclusions in this instance, we are in complete agreement therewith.
The judgment of the trial court is affirmed at Appellant’s cost.
Affirmed.