58 So.2d 568 (1952)
LEE
v.
NATIONAL CYLINDER GAS CO.
No. 19542.
Court of Appeal of Louisiana, Orleans.
April 28, 1952.
Rehearing Denied May 26, 1952.
Writ of Certiorari Denied July 3, 1952.
*569 Deutsch, Kerrigan & Stiles, Robert E. Leake, Jr., New Orleans, for defendant-appellant.
Porteous & Johnson and Parnell J. Hyland, New Orleans, for plaintiff-appellee.
JANVIER, Judge.
Plaintiff, Ernest Lee, who conducts his business as "Marine Service and Repair," seeks to recover from National Cylinder Gas Company $893, alleged to be due for services rendered under a verbal contract of employment for the demolition and removal of what turned out to be a "steel reenforced" concrete foundation of a diesel engine which was in defendant's plant at 529 Felicity Street, in New Orleans. In addition to the prayer for judgment for $893, plaintiff prayed that his lien and privilege upon the real estate, on and in which the foundation was located, be recognized.
Defendant answered, admitting that a contract had been entered into for the demolition and removal by plaintiff of the engine foundation, but alleging that the contract contemplated the payment to plaintiff of $160, which was subsequently increased by agreement to $260; that the work had not been completed by plaintiff; that, in the completion of the job after plaintiff had abandoned the work and had been put in default, defendant expanded the sum of $120 and that, as a result, there was due to plaintiff only $140.
In the Civil District Court for the Parish of Orleans there was judgment in favor of plaintiff for $893, the amount prayed for, and recognizing and maintaining plaintiff's lien. From this judgment defendant has appealed.
It appears from the record that, during January, 1948, defendant removed from its plant a heavy diesel engine, and employed the plaintiff to transport the said engine from its location at 529 Felicity Street to a new location. While he was engaged in performing this work plaintiff, noticing that the large foundation on which the engine had rested still remained in the plant, solicited from the defendant, through its plant superintendent, Jesse J. Wolfe, the job of demolishing and removing this foundation.
The pivotal point on which a decision in this matter hinges is what conversation took place between the plaintiff and Mr. Wolfe leading up to the confection of the contract for the demolition of the foundation. Plaintiff says that Mr. Wolfe told *570 him that the foundation was composed only of concrete, whereas Mr. Wolfe says that he made no such statement to plaintiff, and that he could not have made such a statement because the foundation had been constructed long before he commenced his connection with defendant and therefore necessarily he could have had no knowledge as to its composition. At any rate, whatever the prior conversations were, plaintiff wrote to defendant as follows:
 "New Orleans 13, La. 2-1-48
"Gentlemen:
"We the above will move from your Plant N. C. & G. Co. at New Orleans, La., 1 Foundation used for 1 Diesel Engine for the sum of $160.00. Grading 3" below Floor Surface. Removing all debris off the premises. And taking all risk and claims by the above. We are covered by Insurance against Casualty & Libial. All work must be performed in the best of workmanship. At no time we will not stop hinder any of the N. C. & G. Co. employees.
 "Sincerely yours
 "Ernest Lee."
This offer was verbally accepted by Mr. Wolfe on behalf of defendant. On the night of March 27, 1948, which was the night before Easter Sunday, the plaintiff sent his "night crew", composed of two men, to commence the demolition of the foundation. During that night these two employees by "chopping" were able to remove only about 10 inches from the top of the foundation, and then discovered that in this concrete there was reenforcement consisting of very heavy I-beams and angle irons which, it is stated, were 12 inches wide and 48 inches deep. On this steel reenforcing material, plaintiff's employees during that night had broken two drills.
Early on Sunday morning (Easter), when plaintiff arrived at the work, his "night crew" informed him of this unexpected development, and he says that he summoned Mr. Wolfe who himself came to the plant where plaintiff says that he told Mr. Wolfe that his original offer did not contemplate that the concrete would be "full of iron." Here again there is a conflict between the testimony of plaintiff and that of Mr. Wolfe. Plaintiff says that Mr. Wolfe, realizing that the concrete was heavily reenforced with steel, asked him: "Will one hundred dollars do you any good?" And that he answered that $100 would carry on the work until Tuesday morning, meaning the second day after that on which the conversation is alleged to have taken place.
Mr. Wolfe says that when plaintiff complained about the reenforcing, he agreed to ask his company (defendant) to authorize him to increase the contract price by $100 and that plaintiff said that if this could be done, he could complete the work by Tuesday. The defendant, by long distance telephone, communicated with the home office of his company and says that he was authorized to pay plaintiff an additional $100 for the completion of the work. Plaintiff says that when Mr. Wolfe asked him if he could complete the work by Tuesday, all that he said was: "All I can tell you is one hundred dollars will last until Tuesday morning. Then what?" And that Mr. Wolfe then said: "I don't care what it will cost, get it out of there."
The record shows that plaintiff then continued with the work, using both a day crew and a night crew until April 9th, and according to plaintiff the actual cost to him was $581, to which he says should be added his own labor which, at $3 per hour, amounted to $312, making a total amount sued for of $893. The amount which he says he actually expended, $581, is made up of the following items:

Cost of day crew, 2 men at $1.00
 per hour for 13 days, $205.78
Cost of night crew, composed of 2
 men at $1.25 per hour for 9
 nights, 202.50
Rent of air compressor, 125.00
170 gallons of gasoline, 42.72
Lubricating oil, 5.00

Plaintiff says that, when the work was completed the foundation had been excavated to a level of from one to three inches below the floor and that there still remained some portions of the reenforcing materials which were below what was intended to be the floor level, and that, since *571 they were below what was intended to be the floor level, Mr. Wolfe said that the work was satisfactory.
The position of defendant is that there was an original contract under which the work was to be done for $160 and that, by subsequent agreement, the amount to be paid thereunder was increased to $260, and there was no further amendment or abrogation of the original contract.
The position of plaintiff is that the original contract was based on the statement of Mr. Wolfe that the foundation was composed entirely of concrete and that when he discovered that his offer had resulted from this mistake on the part of Mr. Wolfe, a new agreement was arrived at, under which he was to complete the work on a "time" basis, that is, that he was to do the work and was to be paid whatever should prove to be the reasonable cost thereof.
Counsel for defendant vehemently argue that plaintiff cannot be heard to claim the amount sued for, for the reason that in his petition he alleges that there was a contract, whereas his evidence shows that he seeks recovery on a quantum meruit basis; that he cannot be permitted to change his position.
Counsel for defendant also argue that plaintiff should not be permitted to recover, even if there was a new contract based on whatever the cost might prove to be, because there was no consideration for any such new contract. Counsel say that there was a complete and fully binding contract to do the work for $160, which was later increased to $260, and that no consideration whatever was given by plaintiff for any subsequent contract; in other words, counsel argue that a promise to do what the promisor is already bound to do cannot be consideration for a new contract, and counsel call our attention to the following language used by our Supreme Court in Monroe Investment Co., Ltd. v. Ford, 168 La. 475, 122 So. 586, 587:
"* * * a promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general rule, the performance of, or promise to perform, an existing legal obligation, is not a valid consideration."
Counsel for plaintiff, on the other hand, argue that the original contract was confected as the result of an erroneous statement made by Mr. Wolfe, and that plaintiff would have had the right to recede from this contract but that Mr. Wolfe, recognizing that the mistake had been made and that the contract had resulted from this mistake, agreed to the making of the new contract. On this point the district judge said:
"This case presents a matter of credibility of witnesses, certainly with reference to the third alleged contract. Mr. Lee and Mr. Migliore testified unequivocally that Mr. Wolfe agreed to let Mr. Lee go ahead with this contract on a time basis.
"Mr. Wolfe on the other hand testified that he did not make such an agreement.
"The record shows that at the time this work was being done, defendant's shop was very busy.
"Taking all the facts and circumstances into consideration, the court believes that the evidence is in favor of the plaintiff, and there will be judgment accordingly."
It appears then that the district judge reached the conclusion that there was a new contract under which the work was done and that plaintiff was employed by Mr. Wolfe to complete the work, whatever might be the cost thereof.
We agree with the district judge that the evidence indicates that such a new contract was entered into, and we immediately state, of course, that where there is such a contract to do a job for whatever it might cost, it is implicit that the price charged will not be whatever the contractor sees fit to charge, but will be whatever may be shown to be the reasonable and proper cost.
It must be remembered that, as was found by the district judge, "defendant's shop was *572 very busy" and that, therefore, defendant was most anxious to have this work completed at the earliest possible moment.
There is nothing in the record to contradict the evidence of plaintiff to the effect that the actual cost to him was more than $500, not including compensation to him for his time and labor. At the time at which this "third" contract was entered into, plaintiff had already discovered the allimportant fact that the concrete foundation was heavily reenforced, and we find it difficult to believe that, with this knowledge, he having prevailed upon the representative of defendant to agree to the abrogation or amendment of the original contract on the ground that it had been confected as a result of a misstatement, would have made a new contract for only $100 more than the original price, when, as a matter of fact, it developed that the actual cost to him was more than double the price, which Mr. Wolfe says he agreed to take for the whole job. And we add that even after plaintiff discontinued work, defendant maintains that it was required to expend an additional $120 to produce the result which defendant says should have been produced for the original amount agreed upon.
We do not mean to say that merely because plaintiff made a bad contract he should be permitted to abrogate it, but we do say that, when plaintiff discovered that he had made a bad contract and was able to persuade the defendant that he had a legal right to demand a change, he would hardly have agreed to enter into a new contract for an amount so obviously insufficient.
On the legal question posed by defendant, that there was no consideration for the so-called third contract, and we do not think it important whether we designate the final agreement under which the work was done as a third contract or as an amendment of the original contract, we have this to say.
Of course, we thoroughly agree with the well settled principle that an agreement to do what one is already bound to do cannot be considered as consideration for a new agreement to do that same thing. However, we say here that, because of the dispute over the statement on which the original contract is alleged to have been based and the possibility that as a result of that dispute the plaintiff could have abrogated that contract, his agreement to proceed with the work under a new contract was adequate consideration for the making of that contract by the defendant.
Nor can we agree with defendant that there is no such thing as a "contract" where the price or the cost is not fixed. Counsel say that the allegation that there was a contract is inconsistent with the proof that no price was fixed. We think that there may be a perfectly valid contract to do a certain job for whatever proves to be the cost and that such a contract means that the contractor is employed to do the work and that the other party must pay for the work whatever is proven to be the reasonable and proper cost thereof.
The rule we have in mind is clearly stated in C.J., Vol. 71, Work and Labor, § 139, page 164:
"Contract Silent as to Compensation. Where services are rendered, or incidental materials furnished, under a contract not specifying the amount of compensation, the measure of recovery is the fair and reasonable value thereof, * * *."
Our conclusion is that the district judge was not manifestly in error in finding that a new contract had been made and in finding also that the reasonable cost of the work performed by the plaintiff was $893.
Accordingly, the judgment appealed from is affirmed at the cost of appellant.
Affirmed.