75 So.2d 379 (1954)
WENDEL
v.
MAYBURY et al.
No. 20072.
Court of Appeal of Louisiana, Orleans.
March 29, 1954.
On Rehearing November 8, 1954.
*380 Forteous & Johnson, New Orleans, for plaintiff-appellant.
Richard Dowling, New Orleans, for defendant-appellee.
JANVIER, Judge.
This is a suit by a building contractor for a balance alleged to be due to him on a ten per cent commission which he alleged defendants agreed to pay him on what is termed "a cost-plus" building contract under which he agreed to erect for defendants a building for which they were to pay all costs of labor and material and then a commission to him on the said cost.
The defense is that the contract was for a specified price and that the total contract price has been fully paid. From a judgment dismissing his suit, plaintiff has appealed.
The record shows that E. H. Maybury and his son, Wayne Maybury, owned a piece of real estate in New Orleans and that they decided to construct on it a building to be used in their business. They consulted their friend, Elmer Emile Wendel, the present plaintiff who was a building contractor. Wendel agreed to construct the building but there was no written contract. As the work progressed, Wendel called upon defendants for payments which were made and which finally totaled the sum of $9,296.40.
Plaintiff rendered a statement to defendants in which he showed that he had expended for their account $9,256.58 and to this he added his commission of ten per cent, making a total of $10,182.23. He showed that he had received from defendants the amount set forth, to-wit $9,296.40, and he made demand for the balance to which he claims he was entitled. According to this statement this balance amounted to $885.83. He brought this suit for that amount.
The defendants admitted that plaintiff had been employed to construct the building, but they averred that he had agreed to do so for a fixed contract price of $9,296.40, which amount they had paid, and they denied liability for any balance.
Except for some minor disputes over small amounts, a determination of the entire controversy depends upon a solution of the question of whether the contract called for a fixed price or was on what is termed a cost-plus basis, that is to say, whether defendants agreed that they would reimburse plaintiff for all costs of labor, material, etc., and then pay him a commission of ten per cent on the balance.
In our opinion the record leaves no room for doubt. We think it is conclusively shown that plaintiff agreed to construct the building for defendants and that they were to pay all the costs and, in addition, a commission of ten per cent to him.
In the first place, although in their answer defendants aver that the contract price was fixed at the rather odd figure of $9,296.40, in their testimony they both state that the agreed contract price was $9,200. In the second place, it appears that on several occasions during the progress of the work the elder of the defendants, without *381 consulting plaintiff, ordered certain changes to be made each of which increased the cost of the work. Surely if there had been a fixed contract price he would have had no right to do so without first obtaining the approval of the contractor.
It further appears that on numerous occasions before the defendants made payment to plaintiff, they required that he exhibit to them the bills which he had paid for material or for labor. Had the contract been for a stipulated price, they would have had no interest in the amount of those bills.
It also appears that although Mrs. Wayne Maybury, the wife of one of the defendants, was called to the stand to testify and said that she knew that the contract was for a fixed price, she also said that it was understood that if the actual cost should be less than $9,200, "* * * the charges would be reimbursed to us, in our favor, back to us." She was finally asked if it was not a fact that it was understood that if the cost was less than $9,200, her husband and her father-in-law "would save the difference," and she answered, "That is what I understood the agreement to be."
In addition to certain changes which were ordered by one of the defendants, it is shown that the defendants preferred another type of concrete block to the type selected by the plaintiff, and that they ordered this other type although the cost thereof exceeded that of the blocks selected by the contractor.
In addition to these facts, there was other verbal testimony to the effect that it had been understood that the building was to be erected on a cost plus basis. Mr. I. L. Shaddinger, one of the materialmen who was to furnish the concrete blocks which were not acceptable to the defendants, said that he heard Mr. Maybury (Sr.) mention that the building was being erected "on time and material," and he "was trying to get it as cheap as he could."
Albert Duncan, a bricklayer who laid most of the concrete blocks, says that he was ordered by Mr. Maybury (Sr.) to make a change in the construction of the building, and he was asked why he did this on instructions of Maybury "instead of waiting for your boss, Mr. Wendel to tell you"? He answered, "Well, he had said it was a time and material job." When asked, "Who said that" he answered, "Mr. Maybury."
Mr. C. W. Montague, who says that he does foundation work and that he drove the pilings and put in the foundation beams and poured the concrete floor, says that Mr. E. H. Maybury was present at various times while he was working on the job and that Mr. Wendel and Mr. Maybury both told him that "it was cost-plus."
In spite of the statement of Mr. Maybury, Sr., that, at the time at which the contract was entered into, all details concerning the type of material were agreed upon, the record leaves us with the very distinct impression that this was not correct and that various materials were selected after the work was started. Surely no contractor, after agreeing on a fixed price, would have permitted the owner to select materials which might cost more than those contemplated when the contract was entered into.
It also appears that one of the subcontractors voluntarily agreed that a portion of his work had been defective and refunded $500 which seems to have been the estimated cost of doing that particular work over again. While there is some doubt on the question, the record leaves us with the conclusion that this amount was credited to the account of the defendants. If there was a fixed contract price, surely the contractor who would have been called upon to do the work over would have been entitled to this refund.
The only fact which throws any doubt at all on the amount which is due to the plaintiff is that after the work was practically completed, he sent a statement to the defendants in which he showed that he had expended for their account $8,696.40, and that his commission amounted to $869.64 and that therefore the total amount due was $9,566.04. This statement also showed that since the defendants had paid him $9,286.80, there was a balance due of $279.24. *382 Plaintiff's explanation of this is that after this statement was rendered, certain additional work was required amounting to $592.15. If this is correct, then the total amount due to plaintiff should be based on the original expenditure, $8,696.40, plus the additional amount of $592.15, which would make a total expenditure of $9,288.55. On this basis the commission at ten per cent would have been $928.85, making a grand total of $10,217.40. Since it is conceded that defendants had paid $9,286.80, the total balance due would have to be $930.60. However, plaintiff has claimed in his petition only $885.83 and his recovery must be limited to this amount.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, Elmer Emile Wendel, and against defendants, E. H. Maybury and Wayne Maybury, jointly, severally and in solido, in the full sum of $885.83, with legal interest from judicial demand; defendants to pay all costs.
Reversed.

On Rehearing
McBRIDE, Judge.
In our original opinion we stated that it had been conclusively shown that the plaintiff had agreed to construct the building for defendants who were to pay all the costs, and, in addition, a commission of ten percent to plaintiff. In other words, we concluded that the agreement is what is commonly termed a cost-plus contract. A rehearing was granted because we were not quite satisfied that plaintiff had sufficiently proved certain items claimed by him and shown on his account.
The record shows that defendants were dissatisfied with the concrete floor and that plaintiff re-laid the floor. He testified he completed the work on October 15, 1949, and identified two invoices of Dixie Building Material Company, Inc., bearing that date for sand, cement, and gravel, which he says were used in connection with the new floor.
However, a strange circumstance and one which we do not understand appears in the record. Although plaintiff claims that the corrective work was performed on October 15, 1949, and points to the two abovementioned invoices as supporting this assertion, he, on October 9, 1949, sent to defendants a letter written in his own hand in which he stated that he had "fixed the floor over." The letter reads in part:
"I have fixed the floor over at the laundry at the above building. I have purchased all the labor and material to do this work.
 (1) I furnish the lumber to make the forms.
 (2) " " the labor to chip the flloor.
 (3) " " the concrete to repave the floor.
 (4) " " the sand " " " " .
 (5) " " " cement " " " " .
 (6) " " " labor to repave the floor.
 (7) " " " lumber & hardware to make
 back window frame.
 (8) I furnish the handle for the front door.
 (9) Cut door in toilet to meet concrete.
(10) Furnish carpenter to make forms, door
 frame.
 Put lock on and finish the carpenter work.
The cost on the above for all labor & material is
$712.80. * * *"
The account declared upon in the petition and which is made a part thereof by reference contains a rather vague item in the following words and figures:
 "Millwork, Lumber, Carpenter
 Labor, Hardware, Nails,
 Screws, & Paving Labor $614.80"
We are unable to gather from the record whether this $614.80 is in connection with the original work or with the laying of the floor the second time, but at any rate we do not think plaintiff has made proof of the said item. His testimony is that the total of the bills covering materials and labor for the whole job is $9,256.58 and that he paid each of the bills. The bill which bears no date purportedly supporting the abovementioned item of $614.80 is in the same words and figures shown on the statement without itemization whatever. Plaintiff never attempted to prove exactly what *383 amounts constituted the $614.80, and we are at a loss to know how plaintiff arrived at that figure.
Under a cost-plus contract, the contractor is obligated to use his utmost endeavors to see that the owner gets value received. Lagasse v. Allen, 219 La. 745, 746, 54 So.2d 6. Where there is such a contract to do a job for whatever it might cost, it is implicit that the price charged will not be whatever the contractor sees fit to charge, but will be whatever may be shown to be the reasonable and proper cost. Lee v. National Cylinder Gas Co., La.App., 58 So.2d 568.
The law being thus, we are of the opinion that plaintiff was under the duty of submitting an itemization of each and every expenditure made by him on the cost-plus contract, and that a bill in globo for numerous items will not meet the requirements which are exacted from a contractor working on such basis. The defendants denied they were indebted to plaintiff, so plaintiff carried the burden of proving each and every item of expense in connection with the erection of defendants' building, and as we have already said, we do not believe he has successfully done so. Therefore, the amount awarded plaintiff should be reduced by the sum of $614.80, plus 10 percent thereof, or a total of $676.28.
For the reasons assigned, our original decree is amended so as to award plaintiff the sum of $209.55 and nonsuiting him as to the item of $614.80 and 10 percent commission thereon, and as thus amended our original decree is reinstated and made final.
Original Decree Amended and Reinstated.
REGAN, Judge, (dissents).
I respectfully dissent. I am of the opinion that the original decree of this court was correct.