296 So.2d 428 (1974)
Charles J. KERNER, Jr., and Vincent L. Piraro, d/b/a K. P. Builders
v.
Mr. and Mrs. Emil GILT.
Joseph F. BUA
v.
Emil J. GILT et al.
W. J. GEAGAN LUMBER COMPANY, INC.
v.
Charles J. KERNER, Jr., and Vincent L. Piraro, d/b/a K. P. Builders.
No. 6017.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1974.
Rehearing Denied July 3, 1974.
Writ Refused September 20, 1974.
*429 George J. Dowd, Chalmette, for Mr. & Mrs. Emil J. Gilt, defendants-appellants.
Kenneth C. Hughes, Metairie, for Charles J. Kerner, Jr. & Vincent L. Piraro, plaintiffs-appellees.
E. E. Huppenbauer, Jr., New Orleans, for Joseph F. Bua, plaintiff-appellee.
Thomas L. Hollis, New Orleans, for W. J. Geagan Lumber Co., Inc., plaintiff-appellee.
Before REDMANN, SCHOTT and MORIAL, JJ.
SCHOTT, Judge
These consolidated cases arose out of a remodeling job on the house owned by Mr. and Mrs. Emil J. Gilt in Harahan, Louisiana. The principal suit by Charles J. Kerner, Jr. and Vincent L. Piraro, d/b/a K. P. Builders, as the contractor, was a claim for $6,650.76, based on allegations of a written contract between them and the Gilts. The second suit by Joseph F. Bua, a roofing contractor, against K. P. Builders and the Gilts was a claim for $1,400.00 for labor and material in finishing the roof on the house, and the third suit was by Geagan Lumber Company, Inc., a supplier of lumber, against K. P. Builders and the Gilts claiming $483.72 for materials installed in the house.
In response to the claim of K. P. Builders, the Gilts alleged that the work was performed pursuant to an oral contract between them entered into on April 12, 1970, under the terms of which certain work was to be done for a lump sum of $8,685.00. They alleged that the written contract entered into subsequently was to cover extra work on the basis of its cost plus 20% profit to the contractor. They allege that K. P. Builders breached the contract in that they abandoned the project before completion and in that the work done was defective. The Gilts reconvened for the cost of completing the work and for damages to the contents of the house and mental anguish and physical suffering sustained by Mrs. Gilt, allegedly caused by the negligence of K. P. Builders in performing their work. In response to the Bua claim for the roofing job, the Gilts contended that the work was defective and that the material used on the job was not of the quality Bua represented it to be.
As to the claim of the lumber supplier, while there is no question but that the amount is owed there is disagreement between the Gilts and K. P. Builders as to who is liable for the amount. This is a dispute without substance. Both are liable since there was no timely recorded general contract; LSA-R.S. 9:4812.
*430 In written reasons for judgment, the trial judge found that the parties did enter into "an extremely loose agreement" for work on the Gilts' house; that the written contract sued on by K. P. Builders was only a memorandum of discussions between the parties and that K. P. Builders was justified in failing to complete the job because of the Gilts' failure to make progress payments. He found further that K. P. Builders was entitled to recover the full amount of labor and materials shown on invoices submitted by K. P. Builders to the Gilts during the performance of the work plus 20% of profit on the amounts charged for items other than labor performed by K. P. Builders, resulting in a judgment in favor of K. P. Builders in the amount of $3,829.18. The reconventional demand of the Gilts was dismissed on a finding by the trial judge that they failed to carry their burden of proof concerning defects and poor workmanship. A judgment was awarded to Bua against Gilt in the amount of $1,400.00, but Bua's claim against K. P. Builders as well as the reconventional demand of Gilt against Bua was dismissed. Judgment was rendered in favor of W. J. Geagan Lumber Company, Inc. against the Gilts and K. P. Builders jointly and in solido for $483.72. The liens in favor of Bua and Geagan were recognized and maintained. From these judgments only the Gilts have appealed.
The evidence shows that for some period of time prior to any meetings between the Gilts and K. P. Builders the Gilts had been considering some remodeling of their home and had secured a set of plans outlining the work to be done. Vincent Piraro, one of the two partners owning K. P. Builders, met the Gilts in April or May, 1970, and agreed to study the plans for the purpose of submitting an estimate to do the work desired. On May 9, 1970, an agreement was struck between the parties which included the following:
"Article 1. Scope of work-Contractor shall furnish all labor and material to perform all work as per plan's and owners specifications.
2. Time of completionNinety (90) days or sooner pertaining to weather conditions.
3. Contract SumOwner agrees to pay labor and material plus 20% of complete cost.
4. Progress paymentsto be agreed upon by owner and contractor.
5. Final paymentupon completion of job. All to be presented and 20% attached."
Gilt testified that the written document was drawn to cover any extra work which he wanted done during the course of construction but that an entire detailed scope of work was orally agreed upon between the parties on April 12, 1970, for a lump sum price of $8,685.00. Although the written contract refers to plans and specifications, and although a set of plans was introduced at the trial (not found in the record before us on appeal), there were never any written specifications.
It is clear from the testimony of the parties that they generally understood and agreed that the scope of the work to be performed was 1) an extension of an open cement patio located in the rear of the house enclosed on three sides by outer walls of the house, and 2) the covering over of that patio by extension of the existing roof on the house with enclosure of the extended patio on the fourth side by the construction of a new exterior wall. With this work would come a two-story addition to the house, and it was contemplated that dormer windows would be installed in the original as well as the extended roof over the area of the new downstairs room where the open patio formerly existed. There is no basis for our disturbing the trial judge's rejection of the Gilts' theory of an oral contract to do this work for a lump sum since that issue was resolved primarily on the basis of a resolution of conflicting testimony of Gilt *431 and Piraro. The evidence shows that the parties agreed that the general scope of work described above was to be done on the basis of the cost of the labor and material required plus 20% as a gross profit to the contractor with the specifications or details to be supplied as the job progressed. The evidence further supports Piraro's testimony to the effect that it would have been impractical for him to do this work on a lump sum basis because the cost could not be estimated in advance.
The work commenced on May 18, 1970, and on June 10 the first bill was presented to the Gilts in the amount of $2,230.70 for lumber, gravel and concrete, studs, braces, nails, form lumber, labor for concrete finishing, and labor supplied by employees of K. P. Builders between May 18 and June 12. Mrs. Gilt testified that she carefully followed and recorded the progress of the work and was convinced that this first bill was padded so that the Gilts paid only $1,500.00 on the account on June 15.
As the work continued the Gilts were presented with additional bills on July 2 for $1,755.50 and on August 5 for $2,934.04, on account of which they made payments to K. P. Builders on July 5 in the amount of $1,500.00, July 22 for $750.00 and August 11 for $1,500.00. Mr. Gilt testified that he did not pay the entire amount shown on each billing because the work had not advanced sufficiently to warrant the amount billed on each date; because the labor bills included charges of four dollars per hour for Kerner's and Piraro's high school age children; because some of the time included in his bill was for work done by K. P.'s employees on other jobs; and because of duplications of items from one billing to another.
Piraro testified that after each billing the Gilts complained that the job was becoming too expensive; that although he had threatened to abandon the job after each partial payment he was prevailed upon by the Gilts to continue; that Mr. Gilt told him he "was well satisfied" with the work; and that K. P. Builders finally left the job on August 28 because they had not been paid.
Thereafter, the Gilts expended some $7,409.92 on exterior brick work, interior finishing, electrical work, heating and air conditioning installation and other items. A portion of their reconventional demand is for the recovery of these items from K. P. Builders on the theory that these are recoverable for breach of contract.
Thus, we are confronted with a claim by a contractor on a "cost-plus" contract, a defense by the owners that the contractor improperly performed some of the work or failed to perform all of the work called for, and a reconventional demand for the owners' cost of remedying the defects and completing the contract. Several cases decided by this Court provide us with solutions to these problems.
In any cost-plus contract there is an implicit understanding between the parties that the cost must be reasonable and proper. The contractor is under a duty of itemizing each and every expenditure made by him on the job and where the owner denies being indebted to the contractor the latter has the burden of proving each and every item of expense in connection with the job. Wendel v. Maybury, 75 So.2d 379 (Orl.La.App.1954), Lee v. National Cylinder Gas Co., 58 So.2d 568 (Orl.La. App.1952). In such a contract the contractor is hired in a supervisory capacity and when the owner cancels the contract the contractor is entitled to reimbursement for labor and materials and the profit thereon at the time of cancellation, but such contractor is not entitled to profit on remedial work not performed by him or anticipated profit on work which is required to complete the contract and which would have been performed by the contractor but for the cancellation. Delta Paving Co. v. Woolridge, 209 So.2d 581 (La.App. 4th Cir. 1967).
Applying these principles, first to the main demand of K. P. Builders, we *432 find that they did not carry their burden to prove that their costs were reasonable and proper. Obviously, to meet this test a cost-plus contractor must show that his work was performed efficiently and without the necessity of recurring remedial work suggestive of poor workmanship, so that the owner is not faced with excessive labor cost. While we are mindful of the dicta in the Delta Paving Company case to the effect that a cost-plus contractor is permitted reimbursement for remedial work needed during the course of performing the contract, it can hardly be said that the owner must pay for repetitive work caused by the ineptitude of the workmen employed by the contractor. From the manner in which K. P. Builders handled the opening of the roof on the Gilts' house and from the testimony of the expert witness who testified on behalf of the Gilts, it is clear that K. P. Builders lacked the skill and efficiency to perform the work they had undertaken and as a result much of the costs they claimed from the Gilts are not reasonable or proper.
According to Mrs. Gilt, the dilatory manner in which the work had progressed until June 12 led them to be concerned about the forthcoming period when the roof of the house would be opened with corresponding exposure of the inside of the house to the elements, but she was assured by Piraro that there would be no problems from any rain which might fall while the roofing stage of the project was in progress. They were again reassured on June 19, one week after the roof had been opened, that they had nothing to worry about with respect to rain, but on June 21 there was a heavy rainfall with the result that the interior of the house and its contents were exposed to rain water. After this occurrence Piraro installed tarpaper so as to divert the flow of water away from the interior of the house. According to Mrs. Gilt from June 21 until August 16 the house was relatively secure from rain, but there were numerous leaks in the roof requiring the placement of pots and pans in the attic to catch water which continued to enter during this period when rain fell. On several occasions during this period water was found to be entering the house requiring the movement of the pots and pans in the attic or the placement of additional ones.
The Gilts produced the testimony of an expert witness who inspected the house in January, 1972, and who testified that the proper method of performing this work was to protect the house with temporary covering over the open roof until the new rafters could be joined to the existing structure and waterproof material placed thereon and that the entire procedure should have taken but two weeks. This same expert testified that none of the studs installed by K. P. Builders were on 16-inch centers as is proper and acceptable so as to accommodate sheet rock or paneling, the roof addition was not tied in properly to the original room, two of the dormer windows were crooked, an excessive amount of nails was charged to the job, and the labor costs on the job were excessive. He was of the opinion that this job could have been done for slightly over $4,000.00 if done properly.
In addition to the foregoing evidence on the question of reasonableness of the charges made by K. P. Builders, their own representative, Piraro, admitted that labor charged to the Gilts included time on the job by Piraro himself and his partner Kerner. In the case of East Contract Supply, Inc. v. Petite Paree Fash., Inc., 250 So.2d 839 (La.App. 4th Cir. 1971), this Court considered the question of the right of a contractor to charge for administrative supervision as a part of the costs in a costplus contract, and concluded that in the absence of this fact being made known to the owner with an agreement by him to pay such a charge the contractor had no right to collect it, the theory being that the percentage added to the cost was the contemplated compensation for such supervisory or administrative expenses. In the instant case it would seem unjust not to pay Piraro *433 and Kerner for their work on the job, but it seems obvious that when the head of a company was included in a crew of workmen much of what he did at the time was necessarily supervision of his employees and at least a portion of such supervision was the basis for the 20% added to the cost when the contract was negotiated in the first place. In addition, the evidence shows that Piraro charged to the Gilts an amount substantially greater than that which he was paying to his workmen in order to cover his taxes, insurance and overhead which, as found in the cited case, are items which were originally contemplated in the percentage added to the cost in a cost-plus contract such as this one.
The trial judge disposed of this problem by adding 20% to the materials portion of K. P. Builders' claim only and adding no percentage to the labor portion, but there is no basis in the record for making such a division, and we are unable to determine whether the ends of justice are served by such.
The burden of proof was on K. P. Builders to show exactly what they paid to their laborers other than themselves and they were entitled to add 20% to those figures. In addition, it was incumbent upon K. P. Builders to show how the time was spent by Piraro and Kerner so they could separate those services between actual labor and supervision and add 20% to the labor portion of those hours only.
We are convinced from the reading of this record taken as a whole that the evidence produced by K. P. Builders is insufficient to support their claim, and the judgment in their favor on the main demand must be reversed. K. P. Builders have already been paid $5,250.00 for work which the Gilts' expert valued at slightly over $4,000.00.
The reconventional demand of the Gilts is for three types of claims. First, they claim a substantial amount for completing the work which they contend K. P. Builders agreed to do, such as the installation of the exterior bricks, the electrical work and the installation of heating and air conditioning. In the case of Delta Paving v. Woolridge, supra, this Court held that when a proprietor cancels a cost-plus contract the contractor cannot recover the profit he would have made on the anticipated work had he been permitted to perform the same. The logical extension of this case is that where the owner cancels such a contract and completes the work himself he has no claim against the costplus contractor for the cost of performing such work, and we decline to permit the Gilts to recover this portion of their claim. However, included in what they call completion costs are items which were necessary to remedy defects in the workmanship of K. P. Builders. The Gilts employed a workman to install paneling in the added room and the total cost for his work was $1,100.00, but he testified that because of the studs being improperly installed by K. P. Builders, that is, that they were not on 16-inch centers, his work took nine days where it would have taken only six days had the studs been properly installed in the first instance. We therefore conclude that the Gilts are entitled to the sum of $366.67 for this item. The Gilts' electrician testified that he had to charge an additional $35.00 for his work because K. P. Builders had nailed through wires serving the doorbell, and the Gilts are entitled to this item. As will be seen hereafter the judgment in favor of W. J. Geagan Lumber Company, Inc. against Gilt for $483.72 for lumber and other materials sold to K. P. Builders and installed in the project will be affirmed, but since this item was included in the claim of K. P. Builders against the Gilts the latter are entitled to their reconventional demand for that item. Hence, the Gilts are entitled to a judgment on their reconventional demand against K. P. Builders in the amount of $885.39.
The Gilts produced the testimony of a contractor whom they employed to repair flashing which had been installed on the *434 dormers, but the evidence shows that this particular flashing was not a part of the work installed by K. P. Builders or Bua, the roofing contractor, but rather by some third party contractor employed directly by the Gilts, so that this defect was not the responsibility of K. P. Builders or Bua.
In proof of their reconventional demand for damage to carpets and draperies, the Gilts testified as to discoloration, they produced photographs taken in November, 1970, and attempted to introduce on their own testimony an undated bid for the installation of new carpets and draperies for a price of $753.90. Aside from the fact that the trial judge correctly excluded the bid from evidence as hearsay there is no evidence as to the original value and condition of the articles and no evidence to show exactly when the damage was done to them.
The remaining aspects of the reconventional demand of the Gilts has no merit. They claim damage for medical expenses, mental anguish and physical suffering on the part of Mrs. Gilt on the theory that such was the proximate result of the negligence of K. P. Builders. Her physician testified that she had been previously treated by him for "ulcerative colitis" in 1958. She consulted him on August 14, 1970, complaining of symptoms during the previous month which were consistent with her problem. While she told him of the trouble she was having with K. P. Builders, particularly regarding the rain coming into her house, the doctor said, "I don't pay too much attention to this type of thing because there are so many stresses and strains that . . . could possibly have an effect on her . . ." We have concluded that the flareup of Mrs. Gilt's condition was just as likely caused by the normal tension and worry which would normally be associated with a major renovation of one's home and was not more probably the result of any particular act of negligence on the part of K. P. Builders.
As to the claim of Bua, the roofing contractor, an attempt was made to prove that an inferior quality of shingle was used on the job rather than the type which was represented by Bua to be used. In the final bill of Bua the Gilts are charged with 43 squares of "Bird Architect No. 70" shingles. The Gilts produced evidence to show that the cost of this type of shingle is $19.75 per square and they produced a roofing contractor who established that this type of shingle was definitely not placed on the roof. On the other hand, Bua testified that he actually used Mark 25 Bird shingles which admittedly cost only $10.45 per square and which had been selected by the Gilts in the first instance. We have concluded that the bill contains an error in reciting that Architect 70 had been applied when in fact Mark 25 had been applied but that this was the type ordered in the first instance and there was no breach of contract on the part of Bua. The evidence shows that negotiations were carried on at first between Bua and K. P. Builders but that ultimately the order was placed directly with Bua by the Gilts, and accordingly the judgment in favor of Bua and against Gilt for $1,400.00 will be affirmed, except insofar as recognition is given to Bua's lien and privilege. Since the roofing contract was between Bua and the owner, and was not timely recorded, R. S. 9:4812 does not provide Bua with a lien. On their reconventional demand against Bua the Gilts failed to show that they sustained any damage because of any negligence on Bua's part. Bua's work was to install shingles only. The sheeting and felt which should have made the house secure from rain water were installed by K. P. Builders.
As to the judgment in favor of W. J. Geagan Lumber Company, Inc., the Gilts have provided no reason for our disturbing same.
Accordingly, the judgment in favor of Charles J. Kerner, Jr. and Vincent L. Piraro, d/b/a K. P. Builders, and against defendants Mr. and Mrs. Gilt, is reversed *435 and their claim dismissed at their cost. The judgment dismissing the reconventional demand of Mr. and Mrs. Emil Gilt against Charles J. Kerner, Jr. and Vincent L. Piraro, d/b/a K. P. Builders, is reversed and there is judgment in favor of Mr. and Mrs. Gilt against Kerner and Piraro in the sum of $885.39.
The judgment in favor of Joseph F. Bua against Emil J. Gilt is affirmed but amended to delete recognition of Bua's lien and privilege. The judgment dismissing the Gilts' reconventional demand against Bua is affirmed.
The judgment in favor of W. J. Geagan Lumber Company, Inc. against Mr. and Mrs. Emil J. Gilt with recognition of the lien and privilege is affirmed.
The costs of this appeal are to be borne by K. P. Builders.
Reversed in part, amended, and affirmed.