374 So.2d 719 (1979)
PLANNING SYSTEMS CORPORATION
v.
James R. MURRELL, III.
No. 10107.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1979.
Rehearing Denied September 10, 1979.
Writs Refused October 8 and November 12, 1979.
*720 Chaffe, McCall, Phillips, Toler & Sarpy, Harry McCall, Jr., James P. Farwell, James A. Babst, New Orleans, for plaintiff-appellant.
Darlene Jacobs, New Orleans, for defendant-appellee.
Before GULOTTA, STOULIG and BEER, JJ.
*721 GULOTTA, Judge.
In this construction contract case for the alteration, improvement and repair of a residence, the plaintiff-contractor appeals from a jury verdict dismissing the main demand and awarding defendant-owner, in reconvention, the sum of $123,000.00. We affirm that part of the judgment dismissing the main demand but reduce the award to plaintiff in reconvention.
On January 1, 1974 plaintiff and defendant entered into a "cost plus construction contract" for alterations, improvements and repairs to 4319 Hamilton Street, owned by defendant, at an "estimated" cost of approximately $35,000.00. The contract provided for reimbursement to plaintiff for all costs incurred in connection with the construction. In addition to reimbursement the contractor was to have been paid ten percent (10%) for overhead and five percent (5%) profit. Monthly statements were to be furnished to the owner showing the amount owed the contractor for reimbursement. The agreement further provided that the owner would have access to invoices, copies of the payroll, certificates and other supporting documents.
In accordance with the contract provisions, on January 31, 1974 an invoice was sent by plaintiff to the owner for reimbursement in the sum of $4,423.60. This amount was paid on February 5, 1974. Again, an invoice for reimbursement dated February 28, 1974, in the sum of $5,371.87, was paid on March 8, 1974. On April 26, 1974 defendant paid plaintiff-contractor an additional $9,000.00 although the invoice for reimbursement, dated March 31, 1974, was only for the sum of $8,365.18. According to defendant because work had not progressed proportionately with the amount of payments made, and because he was unable to ascertain from plaintiff an estimated total cost of the construction, defendant refused to pay April, May, August and September invoices which amounted to $12,104.65.[1] Because of non-payment by the owner, plaintiff discontinued work and this suit followed.
We are first confronted with the question of whether this contract is a cost plus one, as contended by plaintiff, or a fixed price contract, as contended by defendant.[2] In Wendel v. Maybury, 75 So.2d 379 (Orl.La.App., 1954), this court concluded that a building contract which provided for an agreed contract price but which provided that the contractor exhibit to the owner the bills for material and labor before payment was to be made to the contractor was a cost plus contract. See also Sam Parish Const. Co. v. Cities Service Pipeline Co., 254 So.2d 73 (La.App. 3rd Cir., 1971), writs refused, 260 La. 289, 255 So.2d 773 (La.1972). When we consider the contract language in the instant case, together with the language and holding of this court in Wendel, supra, and the 3rd Circuit holding in the Parish Construction Company case, supra, we are led to the conclusion that the contract in the instant case is a cost plus one.
*722 Considering plaintiff's next contention, we find no merit to the claim that the jury erred in dismissing the main demand. The estimated cost of the alterations, according to the contract terms, was approximately $35,000.00. In February 1972 the residence was purchased by defendant at a cost of $24,000.00. In November 1972 the property was extensively damaged by fire for which defendant was paid insurance in the amount of $32,000.00. Estimates for restoration of the damaged property caused by the fire amounted to $52,500.00. Plaintiff discontinued work in August 1974 and Samuel P. Pearce, a contractor employed by defendant to complete the job, commenced work in November 1974.
According to Pearce, when he "took over the job" the carpentry had not been completed; the plumbing had been "roughed in", but major plumbing and electrical changes were required. Pearce testified that the roof which plaintiff had repaired, "had a big hole in it" and charred beams needed replacement. He added that beams were not "square" and the skylight had not been set in properly, all of which made the roof unprepared for sheetrocking. This witness stated that because walls were "out of plumb", restripping and realignment were required. He estimated further that only about fifteen percent (15%) of the house had been prepared for sheetrock.
Essential to our consideration is the fact that at the time Pearce commenced work in November 1974 defendant had paid plaintiff a sum in excess of $18,000.00 and had been billed for an additional sum in excess of $12,000.00. Although the condition of the premises as described by Pearce was nowhere near completion, defendant had paid and had been billed for approximately a total of $31,000.00 of the $35,000.00 estimated contract cost. Clearly the extent of the repairs were not commensurate with and had not progressed proportionately with the total amount of payments made and billed.
In Kerner v. Gilt, 296 So.2d 428 (La.App. 4th Cir., 1974), writs refused, 300 So.2d 185 (La.1974), we stated that in a cost plus contract it is implicit that the costs are reasonable and proper. Where the owner denies being indebted to the contractor, the contractor has the burden of proving each and every item of expense in connection with the job. He is under a duty to itemize each and every expenditure made by him. The Kerner court also cites Wendel v. Maybury, supra and Lee v. National Cylinder Gas Co., 58 So.2d 568 (Orl.La.App., 1952). Applying Kerner to our case, we conclude plaintiff simply failed to carry the burden of showing performance. Accordingly, we find little difficulty in holding that the jury correctly determined that plaintiff was not entitled to recover on the main demand and defendant is clearly entitled to damages resulting from plaintiff's breach.
However, the most perplexing aspect of this matter is the amount of damages to which defendant is entitled. LSA-C.C. article 2769 provides:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
Also, well settled is the rule that in fixed price contract cases where a contractor has substantially performed the contract he is entitled to recover the contract price while the owner is entitled to recover the cost of correction and completion. Where there has been no substantial performance the contractor is entitled to recover from the owner in quantum meruit. Airco Refrigeration Service, Inc. v. Fink, 242 La. 73, 134 So.2d 880 (La.1961); Keating v. Miller, 292 So.2d 759 (La.App. 4th Cir., 1974); Neel *723 v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir., 1975), writs refused, 319 So.2d 440 (La. 1975).
Furthermore, substantial performance is a question of fact. Among those factors to be considered are the extent of the defect or nonperformance, the degree to which the purpose of the contract is defeated, the ease of correction, and the use of benefit to the owner of the work performed. See Airco Refrigeration Service, Inc., supra; Keating v. Miller, supra. Considering the progress or lack of progress of construction and defective workmanship as described by Pearce, we cannot say that plaintiff had substantially performed under the contract.
However, we have concluded that our contract is not a fixed price one but a cost plus contract. In Kerner v. Gilt, supra, this court in considering the measure of damages to which an owner is entitled in cost plus contract cases stated:
"... where the owner cancels such a contract and completes the work himself, he has no claim against the cost plus contractor for the cost of performing such work, ..."
Recovery of an owner's claim in the Kerner case for cost of completion of the work was denied by this court. The obvious reasoning behind this denial is that in cost plus contract cases the contractor presumably has been paid commensurate with the progress of the repairs. Under these circumstances, it is reasonable to assume that neither the contractor nor the owner has sustained any losses. See LSA-C.C. article 2769.
The jury in the instant case awarded defendant-owner in reconvention $123,000.00. This amount is very close to the costs which defendant testified he incurred to complete the restoration.[3] The amount of this award is "clearly wrong".[4]
It is significant that no detail plans or specifications were attached to or made part of the contract. The only plans used in this restoration were lined, schematic drawings indicating only location and designation of rooms as well as the outline of the structure, and were not drawn to scale. (See Appendix 1 for example of plans.) Because only general plans were included, we cannot ascertain the quality and type of materials, fixtures, plumbing or electrical work contemplated by the parties.
Suffice it to say that in the construction or restoration of a $35,000.00 job the quality of construction and fixtures contemplated to be used would not be comparable to those used in the completion of the job at a cost of $123,000.00. For example, a line drawing may indicate a fireplace in a $35,000.00 house contemplated by the parties to be of brick construction, while a $123,000.00 construction job may envision a large, ornate Italian marble fireplace.
Furthermore, it is important to realize that the residence in our case was purchased in 1972 at a cost of $24,000.00; that the fire insurer paid the defendant $32,000.00; that the contract price was for the approximate sum of $35,000.00; that the estimates for repair amounted to $52,500.00; and that the CAB appraisal on the house at the time of the purchase was $32,000.00. Under the circumstances, we cannot conclude that a contractor who defaulted on a $35,000.00 cost plus contract can be made to pay to an owner the cost of restoration in the sum of $123,000.00 (which restoration resulted in a CAB appraisal of *724 $136,000.00 after the job had been completed), when presumably the value of the property would not have been anywhere near that figure had the contract been completed.
Although we conclude that the amount of the jury award in favor of defendant is excessive, this is not to say that defendant is not entitled to damages resulting from plaintiff's breach. At the time of the termination of the contract, defendant had paid to plaintiff $18,795.47 and had been billed for an additional $12,104.65. As pointed out hereinabove, the alterations and repairs were not anywhere near completion.
Furthermore, the detailed testimony of Pearce (from photos admitted into evidence) was that he found pipes from upstairs plumbing coming through the living room ceiling and extending past the beams in the downstairs apartment necessitating the construction of boxes to conceal the pipes; that to correct the installed pipes in the utility room the floor had to be raised four inches; that toilet and lavoratory pipes had to be relocated because they had been placed in unusable positions; that there was no uniformity in the width of the framing of the six bedroom closet openings; that there were eight connections for washing machines with no gas or electrical outlets for dryers for the four apartments; and, that plaintiff's electrician had mistakenly drilled holes in the ceiling beams which required filling in order that the appearance of the exposed beams in the ceiling would not be marred.
Pearce stated further that instead of plumbing pipes running straight in one of the bathrooms, they had been unnecessarily elbowed in different directions; that further plumbing had to be installed in order to connect kitchen appliances because pipes had not been run properly; and that unsightly exposed gas lines were running below the ceiling and required "boxing in".
Roger W. Cavaness, who took over supervision of the job when Pearce left in March of 1975, stated that the rough stages of construction had been finished, no appliances had been installed, nor had plumbing been finalized; and that when he had installed bathroom fixtures, sinks, traps and drains he found the original plumbing incompatible with standard size fixtures. His testimony generally corroborated Pearce.
Clarence Braud, Jr., who had been employed as a carpenter by defendant in June of 1975 while Cavaness was supervising the job, testified that when he arrived on the job he found the stairs in front of the building based on unlevelled ground instead of a concrete slab; that doors were out of plumb and had to be rehinged and recut before carpet could be installed; and that closet doors were uneven in size necessitating his reframing and recutting these doors.
When we consider the lack of progress of the work as well as the deficiencies in construction, we conclude that defendant is entitled to recover $18,795.47, the amount paid to plaintiff. This amount represents the proved "losses" ensuing from plaintiff's non-compliance with the contract. LSA-C.C. article 2769. Defendant failed to establish with any degree of certainty[5] the amount of additional losses sustained as a result of correction of the deficiencies.
Having so concluded, we affirm the judgment dismissing plaintiff's demand. The judgment in favor of James R. Murrell, plaintiff in reconvention, is reduced from $123,000.00 to $18,795.47. As amended the judgment is affirmed. Costs of this appeal to be paid by plaintiff.
AMENDED, AND AS AMENDED, AFFIRMED.

Appendix I to follow.
*725 
NOTES
[1] These invoices included 10% liquidated damages as provided for in the contract on the owner's failure to make payments within 20 days of mailing unless valid objection was made to any of the items shown on the statement.
[2] Nowhere in the record do we find that interrogatories were given to the jury, nor are we favored with the judge's charges as given to the jury. Therefore, under the circumstances we cannot say that the issue of whether the contract was a cost plus one or a fixed price contract was erroneously submitted to the jury, as contended by plaintiff, or that the jury determined that the contract was a fixed price one, as contended by defendant. Although we are unable to determine whether the jury considered the nature of the contract or made a determination of its nature, nevertheless, under the clear mandate of the Louisiana Supreme Court in Gonzales v. Xerox Corporation, 320 So.2d 163, (La. 1975) and this court's opinion in Woods v. Cumis Ins. Society, Inc., 364 So.2d 213, (La.App. 4th Cir., 1978) when the entire record is before this court, judicial economy requires that the issue be decided at the appellate level and the matter not be remanded to the trial court.
[3] According to defendant the total cost including interest for the restoration amounted to $131,310.10. Included in this amount were the costs of a swimming pool in the sum of $7,743.00 together with a fence costing $1,336.00 which admittedly were not included in the $35,000.00 contract.
[4] Arceneaux v. Domingue, 365 So.2d 1330, (La. 1979).
[5] Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (La. 1963); Johnson v. Travelers Indemnity Company, 309 So.2d 357 (La.App. 2nd Cir., 1975), writ denied, 313 So.2d 604 (La. 1975).