[1] The plaintiff millwork manufacturer appeals a judgment rejecting its demands that arose out of the alleged defective performance of a cost-plus 30 percent contract for the installation of a dust collection system in plaintiff's mill.
[2] The trial court awarded defendant, who reconvened, a judgment for the balance and extras owed on the contract, offset by awards to plaintiff for the cost of correcting minor deficiencies in the system ($220), or a total of $7,309.64. Defendant's demand for attorney fees under LRS 9:2781 was denied.
[3] We amend to reduce the judgment by $578.97 which was defendant's cost-plus charge for administrative supervision. The record is devoid of evidence that this charge was contemplated by the contract or was agreed to by plaintiff. As amended, the judgment is affirmed.
[4] FACTS
[5] Negotiations for the contract began June 30 and culminated in a written contract of July 12, 1984. The contract provided that defendant would design and install a dust collection system in plaintiff's mill for actual cost of materials (estimated at $3,168) and labor (estimated at $2,196) plus 20 percent overhead and 10 percent profit.
[6] Plaintiff desired a ductwork and vacuum system that would be capable of eventually serving 19 millwork machines, 12 of which were to be initially served at plaintiff's mill in its new location. According to defendant, the system would require a fan of 7,000 cubic feet per minute capacity. Before the contract was signed, plaintiff instructed defendant to use the largest of the fans that plaintiff already owned in order to keep the cost down. One of defendant's employees then determined that plaintiff's fans would not produce the required capacity of 7,000 cfm. Plaintiff was so informed but responded that a new and larger fan could be purchased later when plaintiff could better afford it. The system sucked wood chips and sawdust from each machine.
[7] The system was essentially completed by July 30 but did not function properly. On August 22, 1984, defendant sent a memo to plaintiff detailing certain additional work which needed to be done to complete the system and enclosed a bill for $7,003.41 work done. Plaintiff's letter reply of September 13 stated that an expert, Tom Nesbitt, would be hired to correct the problems. Plaintiff refused to pay defendant's invoice and considered the amount to be in dispute. On September 17, 1984, plaintiff received another invoice for $496.23 for the additional work. Shortly thereafter plaintiff filed this action.
[8] James Nesbitt found that the main problem with the system was low transport velocity caused by an insufficient fan. He also found a severe bend in the duct at the fan inlet, air leaks at the trunk line access doors, improper support of the duct work, and poor branch entry into the trunk line.
[9] The trial court found that the main problem with the dust collection system was the insufficient capacity of the fan. The court also found that plaintiff was told, prior to the completion of the system, that the fan was not sufficient to properly operate the system. The trial court awarded judgment in favor of defendant for $7,499.64, the balance due on the contract, and $30.00 for a chimney cap sold to plaintiff, and allowed plaintiff an offset for $220 for the cost of repairing the deficiencies Nesbitt found in the system:
[10] (1) $80 to repair air leaks in the access doors;
[11] (2) $100 to repair the deteriorating flexible duct work; and
[12] (3) $40 to repair the duct support.
[13] The court denied plaintiff's other demands and defendant's demands for attorney fees. *West Page 698 
[14] Except as mentioned, we find the trial court's judgment supported by the record and not clearly wrong. Arceneaux v.Domingue, 365 So.2d 1330 (La. 1978)
[15] I. COST-PLUS CONTRACT
[16] The cost-plus contract at issue is a building contract as defined by CC Art. 2756.[1]
[17] The contractor in a cost-plus contract may charge only those costs that are shown to be reasonable and proper.Kerner v. Gilt, 296 So.2d 428 (La.App. 4th Cir. 1974), writ denied. When the owner denies his indebtedness to the contractor, the burden is on the contractor to itemize and prove his costs. Joe Bonura, Inc. v. Hiern, 419 So.2d 25
(La.App. 4th Cir. 1982); Planning Systems Corp. v.Murrell, 374 So.2d 719 (La.App. 4th Cir. 1979), writ denied.
[18] Defendant's detailed cost report set forth the cost of the contract and was impliedly accepted as reasonable by the trial court. This exhibit sufficiently itemizes the cost of the system and is not seriously contested.
[19] II. SUPERVISION COSTS
[20] Plaintiff argues that supervision costs ($438.62) should not be chargeable under a cost-plus contract and that the contract price should be reduced. Under the circumstances of this record, we agree.
[21] In a cost-plus contract, the contractor cannot charge for mere administrative supervision in the absence of an agreement with the owner. East Contract Supply, Inc. v. Petite PareeFash., Inc., 250 So.2d 839 (La.App. 4th Cir. 1971). CompareKerner, supra. The rationale for disallowing such supervision charges is that the percentage (or plus) that is added to the actual costs is contemplated to be the compensation for the administrative supervision. Administrative supervision is to be distinguished from actual on-the-job supervision. SeeKerner, supra.
[22] When we consider that 10 percent profit and 20 percent overhead was added to the $438.63 supervision charge, the judgment allows $578.97 for mere administrative supervision which was not agreed to by plaintiff or contemplated by the contract. There is simply no evidence of any agreement that would allow this charge. we shall reduce the judgment by $578.97.
[23] III. DAMAGES
[24] Plaintiff argues that Defendant's work was not performed in a workmanlike manner, emphasizing the opinion of Nesbitt, who is a registered engineer, that characterized the work as "sloppy" and the design and installation not good engineering practice.
[25] The trial court allowed for the minor problems with the dust collection system and adequately compensated plaintiff by reducing the amount owed by $220. We find no error or abuse of discretion in this amount that was deemed sufficient to repair the defects.
[26] Plaintiff also claims $95,608.33 in damages that were allegedly caused by the faulty system. CC Art. 2769. These damages consist of downtime, damaged millwork products, clean-up time, and cost to replace the system. These alleged losses, however, directly resulted from the accumulation of wood chips in the trunk line caused by the insufficient capacity of the fan installed in the system at plaintiff's direction.
[27] The plaintiff's expert testified that the duct system was obviously built to accommodate a larger fan than was used. He suggested that either the size of the fan would have to be increased, or the size of the ducts would have to be decreased to cure the problem.
[28] Defendant stated that a smaller duct system would not have accommodated the volume of wood waste that would be created *West Page 699 
by the number of machines plaintiff wanted to be connected to the system. Defendant said that plaintiff was repeatedly told that a larger fan was needed to power the system for the number of machines plaintiff desired to serve.
[29] The trial court was not clearly wrong in finding that the major, main, or primary problem with the system was the insufficient capacity of the fan and that plaintiff knew of this potential problem before the system was installed. The record supports the conclusion that but for the inadequate fan capacity, the system would have worked. This problem with the system stemmed from plaintiff's expressed desire to keep costs as low as possible.
[30] Plaintiff did not prove that its damages were attributable to the breach of the contract. CC Art. 2769; Geystand v.Louisiana Special Educ. Center, 415 So.2d 409 (La.App. 1st Cir. 1982); Trahan v. Broussard, 399 So.2d 782
(La.App. 3d Cir. 1981).
[31] IV. ATTORNEY'S FEES
[32] Answering plaintiff's appeal, defendant argues that an open account had been established by the dealings of the parties. We cannot agree. This contract was not one of a series of dealings over a period of time, but rather was a one-time agreement to do a particular building contract. CC. Art. 2756. Defendant is not entitled to attorney's fees under LRS 9:2781. KennerIndustries v. Sewell Plastics, 451 So.2d 557 (La. 1984).
[33] DECREE
[34] The judgment is amended to reduce the balance due on the contract by $578.97, and as amended, and at appellant's cost, is AFFIRMED.
[1] CC Art. 2756 provides:
To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.